**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,       ) | No.  CR-24-00611-PHX-SPL-01 |
|                                 ) | |
| Plaintiff,     ) | **ORDER** |
| vs.                             ) | |
|                                 ) | |
| Philip Kevin Clark,             ) | |
|                                 ) | |
| Defendant.    ) | |
|                                 ) | |

Before the Court is Defendant's Motion to Dismiss Counts 21 through 24 of the Indictment (Doc. 53), the Government's Response (Doc. 60), and Defendant's Reply (Doc. 61). For the following reasons, the Motion will be denied.

**I.     BACKGROUND**

On April 9, 2024, an indictment was issued charging Defendant Philip Kevin Clark ("Defendant") with twenty counts of Failure to Pay Employment Tax in violation of 26 U.S.C. § 7202, two counts of Wire Fraud in violation of 18 U.S.C. § 1343, and two counts of Transactional Money Laundering in violation of 18 U.S.C. § 1957. (Doc. 3). Since at least 2002, Defendant has owned and operated a bottled water distribution business, PKC Enterprises, Inc., d/b/a Diamond Brooks Bottled Water ("DBBW"). (*Id.* ¶ 2). On December 21, 2016, Defendant was convicted of failing to pay over $300,000 in employment taxes to the IRS on behalf of DBBW, and he was sentenced to five years of probation. (*Id.* ¶ 2(c)); *see* Case No. CR-15-00379-001-PHX-SRB. In 2020, Defendant was found to have violated the terms of his probation, and in 2022, he was placed on supervised release for

an additional three years. (Doc. 3 ¶ 2(c)).

The Government alleges that between 2017 and 2021, Defendant willfully failed to pay the IRS nearly $400,000 in employment-related taxes collected as "trust fund taxes" on behalf of his employees and more than $220,000 in employment-related taxes he owed as an employer. (*Id.* ¶ 10; Doc. 60 at 2). It further alleges that Defendant committed Paycheck Protection Program ("PPP") fraud by obtaining $258,954 in loans and subsequent forgiveness of those loans based on materially false information. (Doc. 3 ¶ 11). Finally, it alleges that he committed money laundering by using part of the money derived from the PPP loans to pay his residential mortgage. (*Id.* ¶¶ 13–14; Doc. 60 at 4). Based on these allegations, the Government seeks forfeiture of Defendant's money and property used in furtherance of these offenses. (Doc. 3 ¶ 15).

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) permits the filing of a pretrial motion alleging a defect in the indictment for failure to state an offense. "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."). In judging the sufficiency of an indictment, the court "must look at the indictment as a whole, include facts which are necessarily implied, and construe it according to common sense" to determine whether "the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016) (quoting *Buckley*, 689 F.2d at 897).

"In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment," and the Court

"must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The Court should not consider documentation not appearing on the face of the indictment, and the motion to dismiss "cannot be used as a device for a summary trial of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (citation omitted). As the Ninth Circuit has declared, "The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing." *Boren*, 278 F.3d at 914.

### III.   DISCUSSION

On December 20, 2024, Defendant filed a Motion to Dismiss Counts 21 through 24 of the Indictment. (Doc. 53). Counts 21 and 22 are for Wire Fraud in violation of 18 U.S.C. § 1343, and Counts 23 and 24 are for Transactional Money Laundering in violation of 18 U.S.C. § 1957, but all four counts relate to the PPP loans Defendant obtained for DBBW during the pandemic. (*Id.* at 8). Defendant does not challenge Counts 1 through 20 of the Indictment for purposes of the instant Motion to Dismiss. On March 10, 2025, this Court held Oral Argument in Defendant's Motion to Dismiss, during which counsel for both parties placed their arguments on the record. (ME 64).

### A.   Counts 21–22, Wire Fraud in violation of 18 U.S.C. § 1343

Defendant argues that Counts 21–22 of the Indictment should be dismissed because Defendant never made a materially false statement on his PPP loan application when he attested that he had not recently been convicted of a crime involving fraud, bribery, embezzlement, or a false statement. "[T]o be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). To summarize multiple pages of factual assertions, Defendant essentially argues that because his 2016 conviction was for willful failure to file a tax return, it does *not* involve fraud, bribery, embezzlement, or a false statement, and thus he did not make any false statements when answering questions related to his conviction on the PPP loan application. (Doc. 53 at 13). The Government, however,

argues that Counts 21–22 of the Indictment are "constitutionally sufficient because [the indictment] provides the applicable statutory language and fairly informs Defendant of the alleged crime." (Doc. 60 at 6).

It is true that the crime for which Defendant was convicted in 2016, willful failure to collect or pay over tax in violation of 26 U.S.C. § 7202, does not include fraud, bribery, embezzlement, or a false statement as a listed element of the crime. *See* Dkt. 127, No. CR-15-00379-001-PHX-SRB, at 5–6 (plea agreement in Defendant's 2015 case). Nonetheless, the loan application did not ask Defendant whether he had been convicted of fraud, bribery, embezzlement, or a false statement; it asked whether he had been convicted of a crime *involving* fraud, bribery, embezzlement, or a false statement, which is a broader question. (Doc. 53-1 at 7). The Ninth Circuit has explained that willfulness "in the context of criminal tax cases is defined as a 'voluntary, intentional violation of a known legal duty,'" but that it "need not include 'bad faith' or 'bad purpose.'" *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1991) (citations omitted); *see also United States v. Gilbert*, 266 F.3d 1180, 1185 (9th Cir. 2001). Although a conviction for willful failure to pay taxes *need not* include bad faith, that does not mean, necessarily, that it does not *also* include (or "involve") bad faith—which could include fraud, bribery, embezzlement, or a false statement.

The Court cannot declare, as a matter of law, that the Indictment fails to state an offense for this reason. The Government should have the opportunity to present its case to the jury that Defendant's prior conviction for willful failure to pay tax due "involved" fraud and false statements, especially where Defendant admitted, in his plea agreement, that he "knew [he] was obligated to collect certain employment-related taxes from [his] employees and pay those over to the IRS," yet he "intentionally and voluntarily failed to pay over to the IRS $297,234.43 that [he] collected from employees for this purpose, and [he] instead used the funds for other purposes." Dkt. 127, No. CR-15-00379-001-PHX-SRB, at 6. Defendant will have ample opportunity to make his case to the jury that he never made a materially false statement on his PPP loan application, or that he did not intend to deceive the PPP into granting his loan application; however, this Court declines to deprive the jury

4

of its essential fact-finding role in making such a determination.

**B.     Counts 23–24, Transactional Money Laundering in violation of 18 U.S.C. § 1957**

Next, Defendant argues that Counts 23–24 of the Indictment should also be dismissed because Defendant never wrongfully diverted PPP loan funds. Section 1957(a) provides that a person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity" may be convicted of transactional money laundering. 18 U.S.C. § 1957(a). Counts 23 and 24 pertain to Defendant's use of the money he obtained from the same PPP loans that form the basis of the wire fraud allegations in Counts 21 and 22. Thus, Defendant argues that if Counts 21 and 22 fail to state an offense as a matter of law, Counts 23 and 24 must necessarily fail as well.

Count 23 alleges that Defendant withdrew $33,172.38 of a PPP loan in the amount of $129,477.12 to pay down his mortgage. Count 24 alleges that he later withdrew $23,475.06 of an additional $129,477.00 PPP loan, also to pay down his mortgage. As to Count 23, Defendant argues that he "can show that DBBW spent $129,477.12 on payroll within the applicable 26 week time frame." (Doc. 53 at 14). As to Count 24, he argues that "DBBW spent $367,619.82 on payroll during the 26 weeks that followed." (*Id.* at 15). Thus, he argues that because funds equal to (or greater than) the loan amount were spent on payroll and business expenses during the loan period, it does not matter that he "used some of DBBW's funds to pay himself," because it "does not negate the fact that other funds which came into DBBW during the same period were used for payroll." (*Id.*).

The Government responds that "it doesn't matter why the money was transferred, so long as Defendant knew the money was derived from an unlawful activity and the transaction involved at least $10,000 in such funds." (Doc. 60 at 6–7). At this juncture, "whether the Government can prove its case" is irrelevant to the sufficiency of the Indictment. *See Buckley*, 689 F.2d at 897. Here, presuming the funds were wrongfully derived from PPP loans that "were obtained by failing to disclose [Defendant's] 2016 tax

fraud conviction," which the Government will have the burden of proving at trial, there is no basis for dismissal of these counts. (Doc. 60 at 7). To that end, Defendant's argument that the Government is trying to impose a "First In, First Out" rule on Defendant's use of the PPP loan funds is irrelevant. (Doc. 61 at 5 n.3). How Defendant ultimately used the funds has no bearing on whether the funds were wrongfully derived, which the Government contends that they were. It will be up to the jury to decide which side's argument is ultimately availing.

### IV.   CONCLUSION

A motion to dismiss an indictment may not be used as "a summary trial of the evidence." *Jensen*, 93 F.3d at 669; *see also United States v. Bennett*, 2019 U.S. Dist. LEXIS 65136, at *32 (D. Mont. Apr. 16, 2019) ("There exists 'no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case.'" (quoting *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995)). Here, the Government has met the low burden for the Indictment to fairly inform Defendant of the charges against him.

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss Counts 21 through 24 of the Indictment (Doc. 53) is **denied**.

Dated this 13th day of March, 2025.

Honorable Steven P. Logan
United States District Judge